FILED

2016 Sep-01  PM 12:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

*River,* 13 F.3d 305 (9th Cir. 1993) (system of gullies designed to carry runoff on a mine site to sediment basins found to be a point source). Sediment basins, lagoons and collection basins like those constructed at Maxine are point sources. *Dague v. City of Burlington*, 935 F.2d 1348 (2d Cir. 1991); *Washington Wilderness Coalition v. Hecla Min. Co.* 870 F.Supp 983 (E.D. Wa. 1994). Finally, groundwater seeps traceable to mining wastes are point sources. *Earth Sciences*, 599 F.2d at 374.

A CWA citizen suit may properly be based upon the absence of a valid permit, and the claim that the defendant is discharging without the required NPDES permit. *Hecla Min. Co*. 870 F.Supp 983. Drummond does not possess a valid NPDES permit to discharge polluted water from the GOB pile into waters of the United States. The discharge of sediment and runoff from the GOB pile into waters of the Unites States without such a permit violates the CWA. While it is clear that illegal discharges are ongoing, without a thorough site inspection Riverkeeper cannot be certain exactly where the waters of the United States begin, nor how many additional illegal discharges may be present. This letter therefore, gives general notice of these violations.

In addition to the GOB pile and its related system of drainage ditches and sediment basins, the underground mine works are sufficiently "discernable, confined, and discrete" to constitute a point source under the CWA. *Beartooth Alliance, 904* F.Supp 1168 (holding that AMD seeping from mine openings or fissures is an unpermitted discharge of pollutants from a point source). Polluted water from the mine pool is escaping the mine works and entering Brown's Creek on a regular basis in sufficient quantities to turn the substrate of the tributary orange. (*Figure 5*.)

All of the discharges described in this section constitute ongoing and continuous violations of the CWA which are occurring on a daily basis.

2.      **Drummond Has Violated and Continues to Violate the Clean Water Act by Filling a Tributary of the Locust Fork Without a Permit.**

Section 404 of the CWA empowers the Secretary of the Army to issue permits for the discharge of fill material "into the navigable waters at specified disposal sites."[19] Under the CWA, "fill material" is "material placed in waters of the United States where the material has the effect of: (i) replacing any portion of a water of the United States with dry land; or (ii) changing the bottom elevation of any portion of a water of the United States.[20] This definition includes rock, sand and overburden from mining or excavation. [21]  A discharge of fill material is defined as the addition of fill material into waters of the United States.[22]

---

[19] 33 U.S.C. §1344(a).
[20] 67 Fed. Reg. 31, 129, 31, 143 (2002).
[21] *Id*
[22] 33 C.F.R. §323.2(f).

Drummond did not and does not have a § 404 permit which authorized the filling of the lower portion and mouth of Tributary 1 with GOB from the Maxine Mine site, and it is therefore in violation of the CWA. *Avoyelles Sportsmen's League, Inc.v. Marsh,* 715 F.2d 897 (5th Cir. 1983)(holding that filling in streams and sloughs with fill created by land clearing was redepositing fill materials into waters of the United States, constituting a discharge of a pollutant, which required a Section 404 permit).

In addition, the construction of the dams, which involved placing fill material in Tributary 1 in order to dam it for sediment basins, is also a violation of the CWA. In order to legally conduct such fill activity, Drummond was required to obtain a § 404 permit because the objective of that activity was to change the bottom elevation of the stream to create the sediment basins. *West Virginia Coal Ass'n; Minnehaha Creek Watershed Dist. V. Hoffman, 597 F.2d 617 (8th Cir. 1979)(*construction of dams and rip-rap in navigable waters was "clearly intended by Congress to come within the purview of…404 of the Act."). Even if the dams were originally constructed prior to enactment of the CWA, Drummond is still required to have a § 404 permit as the constant discharge of GOB into Tributary 1 constitutes continuous fill activity which is an ongoing violation.

**B. RCRA Violations**

As stated above, Drummond has violated 42 U.S.C. § 6972(a)(1)(B) of RCRA by 1) causing the GOB from the GOB pile to accumulate in Tributary 1 in a manner that may present an imminent and substantial endangerment to the environment; 2) allowing the rip-rap spillway and dam at the confluence of Tributary 1 with the Locust Fork to deteriorate so that the dam could breach and release the accumulated GOB into the Locust Fork in a manner that would present an imminent and substantial endangerment to health and the environment; 3) allowing runoff from the GOB pile to flow into Tributary 1 in a manner that may present an imminent and substantial endangerment to the environment; 4) allowing GOB to erode directly into the Locust Fork upstream of the mouth of Tributary 1, and to deposit, for many years, on the riverbank of the Locust Fork in the same area; and 5) allowing mine pool water to discharge into Brown's Creek in a manner that presents an imminent and substantial endangerment to health and the environment, to the extent that this discharge is not covered by the CWA.

The USGS National Hydrography Dataset shows that a slough used to exist at the confluence of Tributary 1 with the Locust Fork that extended towards the GOB pile. Over time, that slough has been filled in by the discharge of GOB, which has accumulated behind a man-made dam constructed near Tributary 1's mouth. Upon information and belief, the GOB contains pollutants such as sulfate, aluminum, arsenic, cadmium, chromium, cobalt, copper, iron, lead, and vanadium This deposited GOB has harmed the environment in Tributary 1 and (former) slough in a number of ways. First, the GOB has smothered the stream bed, impairing and virtually eliminating its aquatic habitat value. Second, the GOB has leached substances, including at least, sulfate, ionic salts measured as conductivity or total dissolved solids, aluminum and iron, into water at levels that are harmful to any aquatic organisms

remaining in Tributary 1. Therefore, the accumulation of this GOB in Tributary 1 and the former slough may present an imminent and substantial endangerment to the environment.

The dam that holds back this accumulated GOB appears unstable near its spillway and in danger of breach. Rip-rap from the spillway and GOB are already migrating directly into the Locust Fork. If the dam breached, a large discharge of GOB would potentially occur, causing substantial harm to the Locust Fork, adjacent property owners and recreational users as well as potentially threatening the drinking water source for three downstream municipalities.[23] Such discharges have occurred in other locations like the Gold King Mine, where mine wastes caused widespread environmental harm, and the Dan River, where discharge of coal ash caused environmental devastation downstream. Therefore, the potential breach of the dam retaining the GOB in Tributary 1 may present an imminent and substantial endangerment to health and the environment.

Finally, to the extent that discharges from the mine pool are not covered by the CWA, they violate RCRA in that they are causing harm to the environment. Brown's Creek downstream of the mine pool discharge is visibly contaminated, with iron bacteria discoloring the substrate. Sediment and other pollutants from the mine pool discharge have settled out of the water column onto the substrate of receiving water, forming what is known as armoring. Armoring binds to stream bottoms, rocks, and wood forming a hardened, impermeable coating on the substrate, which builds up as thick, impermeable deposits in the affected streams. These solids can coat stream bottoms, smother aquatic life and destroy stream habitat. Therefore, unless covered by the CWA, the ongoing discharges to this tributary may present an imminent and substantial endangerment to the environment.

## C. Combined CWA and RCRA Violations

As described above in Sections IV(A)(1) and IV(B), it is visually apparent that GOB has eroded from the GOB pile over decades and deposited along the shoreline of the Locust Fork downgradient of the GOB pile, and directly into the Locust Fork in the same area. Sampling of the sediment material indicates that it is the same material which has filled Tributary 1. This discharge of runoff water and the GOB material it transports constitutes a continuous and ongoing violation of both Sections 402 and 404 of the CWA because it is a discharge of solids and contaminated water, together, in the runoff. It is also a RCRA violation, as detailed above, because it presents an imminent and substantial

---

[23] As Drummond well appreciates from its Shepherd Bend Mine litigation, the Birmingham Water Works Board is approaching a critical tipping point at its Mulberry Fork intake located 5.4 miles downstream. If concentrations of toxic pollutants increase in the source water for that intake, it is very likely that the BWWB will have to implement advanced water treatment technology not mandated by law, technology that it does not currently possess or use, and technology which would require significant additional capital costs. *See November 29, 2012 Testimony of BWWB Engineering Consultant Patrick Flannelly* at p. 15, pp. 32-34 (*Birmingham Water Works Board v. ASMC and Shepherd Bend Mine LLC*) ("*Flannelly*") (Applicable regulation does not require BWWB to employ advanced treatment methods, but certain concentrations of metals in source water would require advanced treatment to meet applicable drinking water standards). Some mining-related contaminants are not removed by treatment. *See* BWWB's "Treatability of Potential Mining Contaminants at Western Filter Plant."

endangerment to health and the environment.

## V.   CONCLUSION

If Drummond fails to remedy the issues discussed herein to come into full compliance with the CWA within 60 days of the receipt of this letter and/or fails to come into compliance with RCRA by abating the endangerments described above within 90 days of the receipt of this letter, Riverkeeper intends to file a citizen suit seeking declaratory and injunctive relief as well as civil penalties. Riverkeeper will request, among other remedies, a judgment declaring the discharges or violations described or listed herein to be unlawful; declaring that Drummond is in continuing violation of the CWA and/or RCRA at Maxine Mine; and enjoining Drummond from allowing Maxine Mine to continue to violate the CWA and/or RCRA.  Riverkeeper intends to pursue these and similar or related violations, including all violations which occur or continue after service of this notice and all violations revealed in the course of the litigation discovery process.  In addition, Riverkeeper will seek excavation and/or remediation of the contaminated streams as appropriate; removal of the GOB pile and cessation of all illegal discharges of any kind at the site, and any other necessary and appropriate injunctive relief.

Riverkeeper will also seek the imposition of civil penalties against Drummond under the CWA and RCRA in the amount of $37,500.00 per day for each statutory violation, the maximum allowed by law. See 40 C.F.R. Part 19.  In addition, if successful in the prosecution of this suit, Riverkeeper intends to seek an award of the costs of litigation (including reasonable attorney and expert witness fees) under 33 U.S.C. § 1365 and/or 42 U.S.C § 6972(e).

By failing to comply with the CWA and RCRA, as detailed above, Drummond has injured or threatened to injure, and will continue to injure or threaten to injure, the health, environmental, aesthetic, and economic interests of Riverkeeper and its members.  These injuries or risks are traceable to Drummond's continuous and ongoing violations alleged in this notice letter, and redressing those ongoing violations will redress the injuries or risks to Riverkeeper.  If Drummond has taken any steps to eradicate the underlying cause of the violations described above, or if anything in this letter is inaccurate, please let us know.  If Drummond does not advise us of any remedial steps taken during the notice period, we will assume that no such steps have been taken, that there are no material errors in this letter, and that violations are likely to continue. Finally, we would be happy to meet with Drummond or its representatives to attempt to resolve these issues within the notice period.

Sincerely,

Barry Brock
Senior Attorney, Birmingham Office
Southern Environmental Law Center
2829 Second Ave. S.
Ste. 282
Birmingham, AL 35233
tel:  (205) 745-3060
fax: (205) 745-3064
www.southernenvironment.org

Richard Webster
Public Justice
1620 L STREET NW, SUITE 630,
Washington, DC 20006
Tel. (202) 797-8600
Fax: (202) 232-7203
rwebster@publicjustice.net

Eva Dillard
Staff Attorney
Black Warrior Riverkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-206
Tel: (205) 249-4743
Fax: (205) 458-0094
edillard@blackwarriorriver.org

Counsel for:
Black Warrior Riverkeeper

13

cc:

Bruce C. Webster, Registered Agent
Drummond Company, Inc.
1000 Urban Center Drive, Suite 300
Birmingham, AL 35242

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Heather McTeer Toney, Regional Administrator
U.S. Environmental Protection Agency Region 4
61 Forsyth Street SW
Atlanta, GA 30303

Loretta Lynch, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC 20530-0001

Lance R. LeFleur, Director
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, AL 36130-1463

Johnathan Hall, Director
Alabama Surface Mining Commission
P. O. Box 2390
Jasper, AL  35502-2390

Figure 1

