

FILED
2017 Jul-12  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVER-<br>KEEPER, INC., | ) | |
| | ) | |
| | ) | Case No. 2:16-cv-01443-AKK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DRUMMOND COMPANY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Black Warrior Riverkeeper Inc. ("Riverkeeper"), and files this, its Second Amended Complaint, against Defendant Drummond Company ("Drummond"), as follows:

## Nature of the Case

1.     This is a citizens suit under the Clean Water Act ("CWA") § 505, 33 U.S.C. § 1365 based upon ongoing and continuous discharges of acid mine drainage ("AMD"), and/or other pollutants, into the Locust Fork of the Black Warrior River and a  tributary of the Locust Fork.  Section 301(a) of the CWA, 33 U.S.C. 1311(a), prohibits discharges of pollutants by any person into waters of the United States except in compliance with the terms of a permit issued by EPA or an

authorized State pursuant to § 402 of the CWA, 33 U.S.C. § 1342, such as a permit issued by the U.S. Army Corps of Engineers pursuant to Section 404 of the CWA, 33 U.S.C. § 1344, for the discharge of dredged or fill material into navigable waters of the United States.  Drummond further violated the CWA by damming the former tributary and constructing a system of drainage ditches and instream sediment basins designed to capture the sediment running off the waste pile, which has resulted in the complete filling of the former tributary which ran through the mine site.  Drummond is also violating the CWA by permitting seeps of pollution to escape from groundwater and the underground mine works and reach one or more tributaries of the Locust Fork.

2.      The source of the discharges is the Maxine Mine site, an abandoned mine property owned by Drummond.  Upon information and belief, Alabama Power owns some of the old mine works, but Drummond owns land contiguous to the mine works which it used to store mine waste and build drainage systems during its operation of the mine.  Discharges are occurring continuously from an enormous waste pile, located on Drummond's property, on a ridge above the Locust Fork, via surface and groundwater connected to surface waters.  The discharges travel to a tributary of the Locust Fork, which in turn discharges to the Locust Fork.

3.      Drummond is in further violation of the CWA because it dammed the tributary to construct a system of drainage ditches and instream sediment basins on its property that were designed to capture the sediment and wastewater running off the waste pile.  The sediment has completely filled the tributary which runs through the mine site, past the pile of mine waste to the Locust Fork.  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a permit issued by the U.S. Army Corps of Engineers pursuant to Section 404 of the CWA, 33 U.S.C. § 1344, for the discharge of fill material into navigable waters of the United States.

4.      This action also asserts claims under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), to enforce ongoing and significant violations of RCRA related to Drummond's past and present handling and disposal of mine waste and pollution emanating from that waste, which have filled a former stream, caused contamination of local surface and/or ground waters, and threaten to cause further pollution.

5.      Drummond's past and present handling and disposal of coal waste may present an imminent and substantial endangerment to health and the environment in violation of RCRA.

6.    This action seeks declaratory relief, injunctive relief, penalties and costs of litigation (including reasonable attorney and expert witness fees).

## Procedural History

7.    Pursuant to CWA § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. § 135.3; 42 U.S.C. § 6972(b)(2)(A); and Ala. Admin. Code  r. 880-X-2A-.09,  Riverkeeper provided notice of intent to file suit under the CWA and RCRA, via certified letter to Drummond, on June 29, 2016. (Doc.1, Exhibit A).

8.    On September 1, 2016, after the 60-day mandatory notice period for the CWA claims expired, Riverkeeper filed this suit, asserting three counts based upon violations of the CWA. (Doc. 1).

9.    Drummond was served on September 12, 2016. (Doc. 5), and filed an Answer on September 30, 2016 (Doc. 8).

10.    On October 21, 2016, Riverkeeper's First Amended Complaint was filed to add the RCRA claims (Count IV) outlined in Riverkeeper's notice letter, which claims are subject to a 90-day notice period.

11.    The First Amended Complaint was filed within 21 days after service of the first responsive pleading by Drummond, and Riverkeeper was entitled to file it as a matter of  course pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

**Jurisdiction and Venue**

12.     This action arises under CWA § 505(a), 33 U.S.C. § 1365(a), and RCRA § 42 U.S.C. § 6972(a)(1)(B), and this Court has subject matter jurisdiction over the claims set forth in this Complaint under those provisions, and under 28 U.S.C. §1331 (federal question).

13.     Riverkeeper served notice of the violations alleged herein and their intent to sue on Drummond by certified mail, in accordance with CWA § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2; 42 U.S.C. § 6972(b)(2)(A); and Ala. Admin. Code  r. 880-X-2A-.09 on June 29, 2016 (Doc. 1, Exhibit A).  Copies of such notice were also served on the Administrator of the U.S. Environmental Protection Agency, the Regional Administrator of the U.S. Environmental Protection Agency - Region 4, and the Director of the Alabama Department of Environmental Management.

14.     Neither the Administrator of the U.S. Environmental Protection Agency nor the State of Alabama has issued a final order not subject to further judicial review under CWA § 309(g), 33 U.S.C. § 1319(g), under RCRA, or comparable law of the State of Alabama, assessing a penalty for any violations cited in Plaintiff's notice letter or in this Complaint.  The Defendant has not paid any penalty assessed under CWA, RCRA, or comparable law of the State of Alabama, for any such violations.

5

15.     Pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff has given more than sixty (60) days' notice of its CWA claims, and more than ninety (90) days' notice of its RCRA claims, to all required parties prior to the commencement of this lawsuit, including (a) Drummond, (b) the United States Environmental Protection Agency (EPA), (c) the United States Attorney General, and (d) the Alabama Department of Environmental Management (ADEM).

16.     At least ninety (90) days have passed since service and receipt of Plaintiff's June 29, 2016, notice letter and neither EPA nor Alabama has commenced or is diligently prosecuting a civil or criminal action against Drummond in a court of the United States or a state to require compliance with the laws, rules, regulations, permits, standards, limitations and orders at issue in this case prior to the commencement of this action. Moreover, neither the United States federal government nor the State of Alabama has commenced an administrative action, or any other action, against Drummond for the violations alleged herein prior to the date of Plaintiff's notice letter.  Plaintiff is commencing this action within 120 days of the date of service of its notice letter.

17.     Venue is proper in the Northern District of Alabama because the source of the violations alleged herein is located within the Northern District of Alabama.   33 U.S.C. §1365(c)(1); 42 U.S.C. § 6972(a); and 28 U.S.C. §1391(b) and (c).

## Parties

18.     Plaintiff Riverkeeper is an Alabama nonprofit membership corporation with over 4,000 members that is dedicated to the protection and restoration of the Black Warrior River and its tributaries.  Riverkeeper actively supports effective implementation and enforcement of environmental laws, including the CWA and RCRA, on behalf and for the benefit of its members.  Riverkeeper is a "citizen" within the meaning of section 505(g) of the CWA, 33 U.S.C. §1365(g), and Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

19.     Members of   Riverkeeper use and value the Locust Fork for recreation, including but not limited to, paddling, boating, fishing, swimming, wildlife observation, nature and landscape observation and photography, and for aesthetic enjoyment.  These members believe these waters have been polluted and degraded by Drummond's actions, and that local wildlife and aquatic life has been harmed by the pollution described herein.  Moreover, they are concerned about the significant concentrations of pollutants that the Maxine Mine site is putting into the Locust Fork, and whether those pollutants make it unsafe to recreate near the mine. They are also concerned about the possibility of a catastrophic release of these pollutants into the Locust Fork if the dam that currently holds them back breaches.

20.     The violations alleged herein have lessened members' recreational and aesthetic enjoyment of the Locust Fork.  They would use and enjoy these

waters more if the violations alleged herein are abated.  Enforcement by this Court of the CWA and RCRA as to Plaintiff's claims, including injunctive relief and the imposition of fines, would remedy the injuries suffered by Riverkeeper's members. The interests Plaintiff seeks to protect are germane to its purposes and objectives, but neither the claims asserted herein, nor any of the relief requested, require the participation of individual members in this lawsuit. Accordingly, Riverkeeper has standing to prosecute this action.

21.    Defendant Drummond is a corporation formed in the State of Alabama, which engages in substantial mining activities.  Based upon information and belief, Drummond owns the surface of the Maxine Mine site located in Jefferson County, Alabama, where the violations alleged herein are occurring. Drummond and/or a corporate predecessor mined the property from the 1950s through approximately 1983.  Drummond is a "person" within the meaning of section 502(5) of the CWA, 33 U.S.C. § 1362(5), and section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

## Factual Background

22.    Maxine Mine is a single-pit, underground mine located in Jefferson County, Alabama The mine was formerly owned and operated by Alabama By-Products Corporation ("ABC"), which merged into Drummond Co. on December 31, 1985.  Historic photographs show that major disturbance to the surface of the

mine site occurred starting in the mid-1940s.   Upon information and belief, Drummond dug out the underground mine and mined the site for coal from the 1950s through 1983.   As part of that process, Drummond removed a significant volume of earth covering the coal called geologic overburden, or "GOB," and created an enormous spoil or waste pile, referred to herein as the "GOB pile," which it deposited on a ridge along the banks of the Locust Fork on property it owns.

23.   The Locust Fork is a navigable in fact tributary of the Black Warrior River.

24.   The U.S. Geological Survey's National Hydrography Dataset shows that an unnamed tributary at one time ran through the Maxine Mine site, downgradient from the ridge and the GOB pile, until it met the Locust Fork in a slough.  That tributary referred to herein as "Tributary 1," was and is a water of the United States and maintained a continuous surface connection to the Locust Fork prior to the stream's unauthorized fill by Drummond.  It used to emerge into a slough that was part of the Locust Fork.  The waters of Tributary 1, either alone or in the combination with wetlands in the area, significantly impact the chemical, physical, and biological integrity of the Locust Fork of the Black Warrior River.

25.   At some point, Drummond constructed two earthen dams in Tributary 1; one at the confluence of the slough with the Locust Fork, and a second several

hundred yards upstream of the first.   A map prepared for Drummond in December 1981 by its engineers, P. E. LaMoreaux and Associates ("PELA"), shows the location of these dams.  (Doc. 1, Exhibit A, Figure 2).   Upon information and belief, Drummond never obtained the required Section 404 CWA permit to construct the instream dams. The construction of the dams fundamentally altered Tributary 1 and degraded its ecological value. The area between the two dams, formerly the slough, was also used as a sediment basin (basin 1) for runoff from the GOB pile.  The area upstream of the second dam was also used as a sediment basin (basin 2).  Today, Tributary 1 is entirely filled with GOB, sediment and AMD and its remnant streamflow continuously adds these wastes into the Locust Fork.

26.   The PELA map depicts a third sediment basin (basin 3) upstream of the other two basins, built adjacent to the stream, which received runoff from another area of the GOB pile via diversion ditch.  The PELA map illustrates that the mine operators, in total, designed and constructed four or more diversion ditches which channeled and carried the runoff from the GOB pile into the three sediment basins, which eventually discharged "treated" effluent into the Locust Fork when the mine was active.

27.   According to records maintained by the Alabama Surface Mining Commission (ASMC), the system of ditches and sediment basins was designed and

implemented by Drummond in response to ASMC's concerns about water quality and the effluent leaving the site.   Specifically, the ASMC was so concerned about the GOB pile and the low pH of the effluent leaving the site that it initiated an enforcement action (Docket No. R78-82-134), which led to the creation of settlement basin 3 and additional drainage ditches.

28.     An inspection report by the ASMC from 1983 indicates the "sediment basin near the river [basin 1] continues to discharge bad water," and testing at that time recorded pH at 2.8 s.u., far below acceptable water quality standards. Inspection reports in 1983 also state that the discharge points observed are not permitted NPDES discharge points.  An inspection report dated April 11, 1984, notes that the site has a "leaking dam" which must be corrected."

29.     The leaking dam was never "corrected."   Tributary 1, which continuously receives contaminated AMD from the GOB pile, and flows through the two instream sediment basins, is still discharging pollutants into the Locust Fork on a regular basis.  Riverkeeper, starting in 2006, has continuously observed polluted water flowing over and through the spillway of the dam at the confluence with the Locust Fork.  These discharges of AMD will continue to flow until the runoff from the GOB pile is eliminated or appropriately controlled.

30.     Over time, Tributary 1 completely filled with GOB that washed down from the GOB pile.  Riverkeeper has visually observed that Tributary 1 is now filled with sediment from the GOB pile.

31.     Upon information and belief, and based upon observation  from the banks of the Locust Fork, at least one of the man-made diversion ditches – once connected with basin 3 – remains intact and is continuously discharging AMD into the Locust Fork.

32.     Further, Riverkeeper has observed that GOB is continuously eroding from the pile, down the face of the ridge, and directly into the Locust Fork, where it is accumulating in orange, purple and gray chunks along the bank of the river.

33.     Based upon several recent visits and observation of the site, Riverkeeper has serious concerns about the physical state and integrity of the rip-rap spillway for the dam at the mouth of Tributary 1, which is holding back significant amounts sediment in the instream basins.  The spillway portion of the dam is eroding away toward the river and appears to be in danger of breaching. (Doc. 1, Exhibit A, Figure 3).  Such a breach could be catastrophic and allow massive amounts of additional GOB to spill directly into the Locust Fork.

34.     GOB is a solid waste that typically contains high levels of heavy metals such as iron and aluminum. Unsafe disposal of GOB is dangerous,

threatening the health of local communities, making groundwater unsafe to drink, harming aquatic life and wildlife, and polluting rivers and streams.

35.    While on a patrol along the Locust Fork on May 24, 2006, Riverkeeper first identified the discolored rip-rap spillway and dam on the riverbank at the mouth of Tributary 1.  Riverkeeper noted that Tributary 1 was completely filled with GOB from Maxine Mine's GOB pile located on the ridge overlooking Tributary 1 and the Locust Fork.  Water was observed running over and through the accumulated GOB in multiple places in Tributary 1 as it flowed to the Locust Fork.  With a handheld meter, Riverkeeper checked the pH in water flowing out of Tributary 1 and over the dam into the Locust Fork; the pH was extremely acidic, measuring 2.3 s.µ.

36.    Riverkeeper took Alabama Abandoned Mine Lands Program inspector Larry Barwick to Tributary 1 via patrol boat on November 14, 2006, where Barwick inspected the site and took water samples.  An aerial flight over the site on November 17, 2006, revealed significant erosion of the GOB pile, which is impacting Tributary 1, as well as the Locust Fork itself.  This erosion is an ongoing and continuous process, and it will continue until the GOB pile is removed or other sufficient remedial measures are taken.

37.    Subsequent water testing by Riverkeeper at the site has revealed serious water quality impairment consistent with AMD caused by erosion of the

GOB pile.  Results from samples taken on October 20, 2011, found aluminum levels were 230 mg/L, iron levels were 611 mg/L, lead levels were 0.0840 mg/L lead, manganese levels were 26 mg/L, total dissolved solids levels were 7,050 mg/L, sulfate levels were 5,460 mg/L, and conductivity levels were 8,840 μmho/cm, which are all unacceptable levels for discharges to surface waters.  By way of comparison, if this were an active mine, EPA's New Source Performance Standards for "acid or ferruginous mine drainage for an active mining area" at 40 C.F.R. § 434.35 provides for daily maximum discharge of 6.0 mg/l of iron; 4.0 mg/l for manganese and require the pH of the discharge to be between 6.0 s.u. and 9.0 s.u.

38.     Samples taken by the Riverkeeper on June 23, 2015, show potential violations of Alabama's toxic water quality criteria for nickel, zinc, and copper. S*ee* Ala. Admin. Code r. 335-6-10-.07.   Riverkeeper sample results of the discharge were 1,300 μg/L for nickel; 2,600 μg/L for zinc; and 150 μg/L for copper.

39.     2015 samples also show elevated levels of conductivity, total dissolved solids (TDS), sulfate, and heavy metals, among other pollutants.  TDS levels were 5,125 mg/L, conductivity levels were 338μmho/cm[1], sulfate levels were 1,946 mg/L, iron levels were 70 mg/L, and aluminum levels were 430 mg/L.

---

[1]Riverkeeper measured conductivity levels as high as 8,840 in 2011.

Iron and aluminum can be toxic to fish and other aquatic organisms. For this reason, the EPA has set a Criterion Continuous Concentration ("CCC") (an estimate of the highest concentration of a material in surface water to which an aquatic community can be exposed indefinitely without resulting in an unacceptable effect) for iron at 1.0 mg/L in freshwater.[2]  The level in the water flowing over the dam at Maxine was 70 times the CCC for iron.

40.     The CCC for aluminum is .087 mg/L.[3]  The level in the water flowing over the dam at Maxine was approximately 5,000 times the CCC for aluminum. EPA has set a Criteria Maximum Concentration ("CMC") standard, which is an estimate of the highest concentration of a material in surface water to which an aquatic community can be exposed briefly without resulting in an unacceptable effect.  The CMC for aluminum is 0.75 mg/L.  The water flowing over the dam contained levels that are approximately 500 times the CMC for aluminum.

41.     Analysis of sediment close to the dam in the edge of the Locust Fork, also from the GOB pile, showed that it contained high levels of iron (108,000 mg/kg), aluminum (13,130 mg/kg), and sulfate (2,300 mg/kg).  These results indicate that the observed pollutants in the water originated at the GOB pile. Riverkeeper has observed a significant accumulation of black, gray and red GOB

---

[2]EPA, National Recommended Water Quality Criteria,
http://water.epa.gov/scitech/swguidance/standards/criteria/current/index.cfm#cmc.
[3]The standards for aluminum are set for a pH range of 6.5 to 9.  Although the discharge is more acidic than this, it will rapidly come within this pH range in the Locust Fork.

material in the Locust Fork and along the riverbank, at the upstream end of the GOB pile, which has evidently washed down from the GOB pile over time.

42.     Samples taken near the mouth of the slough in September 2016 show elevated levels of the same pollutants detected in 2011 and 2015. Specifically, for water samples, pH was again extremely acidic, measuring 3.57 s.u.; aluminum was 247 mg/L; iron was 385 mg/L; manganese was 17.8 mg/L; total dissolved solids measured 8710 mg/L; sulfate was 6020 mg; zinc was 1.5 mg/L; nickel was 0.81 mg/L; and conductivity levels were 5370. As to sediment samples taken in the same area, aluminum was 2780 mg/kg; iron was 33500 mg/kg; lead was 11.2 mg/kg; manganese was 34.5 mg/kg; and sulfate was 3530 mg/kg.

43.     From the outset, Riverkeeper suspected that the GOB pile was leaching and contaminating groundwater at the site, and that discharges of pollutants were reaching Tributary 1 and the Locust Fork through groundwater hydrologically connected to waters of the United States. Riverkeeper was able to confirm this at a site inspection conducted on June 12, 2017, involving several experts. Based upon that inspection, it is evident that pollutants are being discharged to Tributary 1 and the Locust Fork via groundwater. This leaching is an ongoing and continuous process, and it will continue until the GOB pile is removed or other sufficient remedial measures are taken.

<u>**Count I**</u>
**Clean Water Act Section 402 --**
**Illegal Point Source Discharges**

44.     Riverkeeper incorporates herein paragraphs 1 through 43, and all factual averments contained therein, by reference.

45.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a NPDES permit issued by EPA, or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

46.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person ... who is alleged to be in violation of .... an effluent standard or limitation under this chapter."

47.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § l365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311 (a), of the CWA and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

48.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the

17

CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

49.     Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

50.     Surface water runoff containing pollutants constitutes a "discharge" for purposes of the CWA when the runoff is collected or channelized by human activity.   At Maxine, the mine owners/operators created the GOB pile, then engineered and constructed sediment basins, contained by earthen dams, as well as a system of drainage ditches and basins to channel and dispose of surface water runoff from the GOB pile, containing AMD, into Tributary 1 and the Locust Fork.

51.     AMD discharged from abandoned mines, based upon its component parts, including but not limited to, iron, aluminum, manganese, zinc, copper, nickel, sulfate, lead and total dissolved solids, satisfies the definition of a "pollutant" under the CWA.

52.     Point sources include surface water which is channeled or collected by man.  40 C.F.R. §122.2.  A spoil pile on an abandoned mine site designed to store discarded overburden may itself be a point source.  *Sierra Club v. Abston Construction Co.*, 620 F.2d 41 (5th Cir. 1980).  The GOB pile and its related

18

system of drainage ditches and sediment basins are sufficiently "discernable, confined, and discrete" to constitute a point source under the CWA as defined by the CWA, 33 U.S.C. §1362(14). A system in which AMD runoff from a spoil pile on a mine site is channeled through ditches into sediment basins, and ultimately into an adjacent water of the United States, is an illegal discharge from a point source.

53.     In addition, the leaching of pollutants into groundwater constitutes a "discharge of pollutants" under the CWA, and because the groundwater on the site is hydrologically connected to surface waters, and is serving as a conduit for the conveyance of pollutants to surface waters, Drummond is discharging pollutants to surface waters of the United States via hydrologically connected groundwater in violation of section 301(a) of the CWA.

54.     The activity described above, and in Plaintiff's notice letter, constitutes a "discharge of pollutants" as that term is defined at 33 U.S.C. § 1362(12) and 40 C.F.R. § 122.2. Specifically, illegal discharges are occurring at the Maxine site at multiple locations, including, but not limited to: 1) through the discharge of AMD via man-made conveyances into Tributary 1 (including two sediment basins), then over and through the rip-rap spillway in the sediment basin dam at the mouth of Tributary 1 into the Locust Fork; 2) through direct discharges into the Locust Fork through one or more drainage ditches constructed to carry

runoff from the GOB pile around the perimeter of Tributary 1 to sediment basin 3; 3) through the erosion of GOB directly into the Locust Fork upstream of the mouth of Tributary 1, and the depositing and accumulation, for many years, of GOB on the riverbank of the Locust Fork in the same area; and 4) through unpermitted discharges of pollutants at numerous locations via hydrologically connected groundwater.

55.     Drummond, which is a "person" pursuant to 33 U.S.C. § 1362(5), subject to the citizen suit provisions of the CWA, owns and/or operates the Maxine Mine and the property on which the GOB pile and other structures described in paragraph 41 are located.

56.     Upon information and belief, Drummond does not have a permit, and is not authorized, under Section 301(a) and Section 402 of the CWA, to discharge pollutants from any point source at Maxine Mine into Tributary 1 or the Locust Fork.

57.     Drummond has violated Section 301(a) of the CWA, on an ongoing and continuous basis, by illegally discharging pollutants from point sources into Tributary 1 and the Locust Fork without a permit on each and every day from at least the past 5 years to the present, and continuing into the future.

58.     The ongoing violations alleged herein will continue unless this Court orders and enjoins Drummond to cease any and all illegal and unpermitted

discharges.  These violations have caused and will continue to cause Riverkeeper irreparable injury.  Riverkeeper has no adequate remedy at law for the injuries caused by Drummond's continuing violations.

## Count II
### Clean Water Act Section 404—Illegal Fill Activity

59.     Riverkeeper incorporates herein paragraphs 1 through 58 by reference.

60.     Pursuant to 33 U.S.C. § 1362(5), Drummond is a "person" subject to the citizen suit provisions of the CWA.

61.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a permit issued by the U.S. Army Corps of Engineers pursuant to Section 404 of the CWA, 33 U.S.C. § 1344, for the discharge of dredged or fill material into navigable waters of the United States.

62.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person ... who is alleged to be in violation of .... an effluent standard or limitation under this chapter."

63.     Section 505(f)(1) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § l365(a), to mean, among

other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311 (a), of the CWA.

64.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

65.     Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

66.     Sections 301(a) and 404(a) of the CWA require a permit for any discharge of dredged or fill material into navigable waters of the United States. Section 404(f)(2) of the CWA prohibits "any discharge of dredged or fill material into navigable waters incidental to any activity having as its purpose bringing an area of navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced" without a permit under this section.

67.     Under the CWA, "fill material" is "material placed in waters of the United States where the material has the effect of: (i) replacing any portion of a water of the United States with dry land; or (ii) changing the bottom elevation of

22

any portion of a water of the United States.[4]   This definition includes rock, sand and overburden from mining or excavation. [5]   A discharge of fill material is defined as the addition of fill material into waters of the United States.[6]

68.     As described in detail above and in Riverkeeper's notice letter, Drummond has placed fill material—runoff of overburden from the GOB pile— into Tributary 1 for decades, on an ongoing basis, to the extent that it has completely filled the Tributary with GOB, choking the former flowing stream with mining waste and changing the bottom elevation of the stream.

69.      Drummond has exacerbated the problem by construction of two dams in the former Tributary 1 without the required Section 404 permit in order to use the stream as a sediment basin and waste conduit for the GOB pile.

70.     Drummond, upon information and belief, does not possess a valid §404 permit which authorized it to fill the lower portion and mouth of Tributary 1 with GOB.

71.     Prior to Drummond's altering of the stream running through the Maxine Mine site, the stream was a tributary with a direct surface connection to the Locust Fork. Tributary 1 significantly affects the chemical, physical, and biological integrity of the Locust Fork of the Black Warrior River.

---

[4] 67 Fed. Reg. 31,129, 31,143 (2002).
[5] *Id*
[6] 33 C.F.R. §323.2(f).

72.     Drummond's damming, dredging, filling, and/or interception of natural flows in Tributary 1 without a permit violates 33 U.S.C. § 1311(a) and/or 33 U.S.C. § 1344(f)(2).  Drummond is subject to civil penalties and injunctive relief for its violations as described above.

## Count III
## Clean Water Act: Combined 402 and 404 Violations

73.     Riverkeeper incorporates herein paragraphs 1 through 72 by reference.

74.     As described above and in Riverkeeper's notice letter, it is visually apparent that sediment has eroded from the GOB pile over decades and deposited along the shoreline of the Locust Fork downgradient of the GOB pile, and directly into the Locust Fork in the same area.  Sampling of the sediment material indicates that it is the same material which has filled Tributary 1.  This discharge of runoff water and the GOB material it transports constitutes a continuous and ongoing violation of both Sections 402 and 404 of the CWA because it is a discharge of solids and contaminated water, together, in the runoff.

75.     Drummond is subject to civil penalties and injunctive relief for the violations.

## Count IV
## RCRA Violations

76.     Riverkeeper incorporates herein paragraphs 1 through 75 by reference.

77.     Pursuant to 42 U.S.C. § 6903(15), Drummond is a "person" subject to the citizen suit provisions of RCRA, 42 U.S.C. § 6972.

78.     Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), authorizes citizens to bring suit "against any person . . . who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

79.     Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), empowers the Court to compel any person referred to in paragraph (1)(B) "to take such . . . action as may be necessary" to eliminate the endangerment.

80.     Section 7002(e) of RCRA, 42 U.S.C. § 6972(e), authorizes the Court to award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.

81.     Coal waste, also known as GOB, is a solid waste as that term is defined by RCRA.

25

82.     Drummond handled and disposed of the coal waste creating the existing GOB pile.

83.     As demonstrated above, Drummond has violated 42 U.S.C. § 6972(a)(1)(B), RCRA by (1) allowing GOB to accumulate in Tributary 1 in a manner that may present an imminent and substantial endangerment to the environment; (2) allowing the rip-rap spillway and dam at the confluence of Tributary 1 with the Locust Fork to deteriorate so that the dam could breach and release the accumulated GOB and sediment into the Locust Fork in a manner that would  present an imminent and substantial endangerment to the environment; (3) allowing runoff from the GOB pile to flow directly into Tributary 1 in a manner that would  present an imminent and substantial endangerment to the environment; and (4) allowing the GOB to erode down the ridge and directly into the Locust Fork, and to deposit for many years on the riverbank of the Locust Fork in the same area.

## **Prayer for Relief**

Riverkeeper respectfully requests that this Court grant the following relief:

A.     Render a judgment finding and declaring that Drummond has violated and is violating the Clean Water Act and RCRA through the illegal and unpermitted discharges of pollutants from point sources into the Locust Fork and to Tributary 1, and to groundwater with a hydrological connection to those surface

waters of the United States, from its property at the Maxine Mine site; and through the unpermitted filling of Tributary 1 with sediment from the GOB pile created by Drummond at the site, and the improper handling and disposal of waste materials.

B.      Issue an injunction ordering Drummond to immediately cease all ongoing and continuing Clean Water Act and RCRA violations, both as to illegal discharges and fill activity.

C.      Order Drummond to remove any fill material illegally discharged into Tributary 1 and/or the Locust Fork, and to discontinue the filling of these waters of the United States, and further order Drummond to cease the conversion and use of Tributary 1 as a settlement basin or storage area for solid waste materials eroding from the GOB pile, and to restore Tributary 1 and its slough to their original condition as to prevent contamination by the Maxine Mine and allow the stream to naturally flow to the Locust Fork.

D.      Assess a civil penalty of $37,500.00 for each and every actionable violation of the Clean Water Act alleged herein until November 2, 2015, and a civil penalty of $52,414.00 per violation for each and every actionable violation of the Clean alleged herein after November 2, 2015, in accordance with CWA § 505(a), 33 U.S.C. § 1365(a) (*see* 40 C.F.R. Part 19).

E.     Order Drummond to abate the endangerment to health and the environment created by its past and present handling and disposal of coal waste at the Maxine Mine.

F.     Award costs of litigation (including reasonable attorney and expert witness fees) to Riverkeeper in accordance with CWA § 505(d), 33 U.S.C. § 1365(d); and 42 U.S.C. § 6972(e).

G.     Award Riverkeeper such other or different relief to which it may be entitled.


Respectfully submitted,

**s/Barry Brock**
Barry Brock (ASB-9137-B61B)
Christina Andreen (ASB-9696-D10R)
Southern Environmental Law Center
2829 Second Ave. S., Ste. 282
Birmingham, AL 35233
tel:  (205) 745-3060
fax: (205) 745-3064
www.southernenvironment.org
bbrock@selcal.org
candreen@selcal.org

**s/James Hecker**
James Hecker
Public Justice
1620 L STREET NW, SUITE 630,
Washington, DC 20006
Tel. (202) 797-8600
Fax: (202) 232-7203
jhecker@publicjustice.net

**<u>s/ Eva L. Dillard</u>**
Eva L. Dillard (ASB-4118-A59E)
Black Warrior Riverkeeper, Inc.
710 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095 Office
(205) 458-0094 Facsimile
edillard@blackwarriorriver.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2017, I served the foregoing Second

Amended Complaint with the Clerk of the Court using the CM/ECF system, which

will serve notification of such filing to the parties below:

William A. Davis, III
Richard E. Davis
Starnes Davis Florie, LLP
100 Brookwood Place, 7th Floor
Telephone:  (205) 868-6000
Facsimile:   (205) 868-6099
Birmingham, AL 35209
red@starneslaw.com
Attorneys for Drummond Company, Inc.

With Copies Via U.S. Mail to:

Hon. Scott Pruitt, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Hon. V. Anne Heard, Acting Regional Administrator
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street S.W.
Atlanta, GA 30303

Hon. Jeff Sessions, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC 20530-0001

Lance R. LeFleur, Director
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, AL 36130-1463