# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BLACK WARRIOR RIVER-KEEPER, INC.,** )<br>)<br>**Plaintiff,** )<br>) <br>**v.** )<br>) <br>**DRUMMOND COMPANY, INC.,** )<br>) <br>**Defendant.** )<br>) | Case No. 2:16-cv-01443-AKK |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO STRIKE UNTIMELY EXPERT OPINIONS

In its Opposition to Plaintiff Black Warrior Riverkeeper's (BWR) Motion for Partial Summary Judgment, Docs. 58-59, 61, Defendant Drummond Company (Drummond) attached expert declarations containing new, untimely expert opinions. Drummond's attempt to expand and fundamentally change its Fed. R. Civ. P. 26(a)(2) opinions after the close of discovery in this case, and during summary judgment briefing, is unjustified and harms BWR. Thus, pursuant to Fed. R. Civ. P. 37(c)(1), BWR respectfully asks this Court to strike Defendant's late disclosures and exclude the new opinions.

Pursuant to the Court's orders, Drummond's expert reports were due November 17, 2017, Doc. 29; rebuttal expert reports were due May 25, 2018, Doc. 35; supplemental disclosures were due "as soon as reasonably possible after new

information is discovered, but no later than **June 29**," *id.*; discovery was to be completed by July 17, Doc. 43; and dispositive motions were due August 15, Doc. 47. Following the Court's schedule, BWR deposed Drummond's experts based on their reports. BWR then filed its summary judgment motion, relying on the opinions expressed in expert reports and depositions. Docs. 51-56. Drummond never supplemented its expert reports.

## ARGUMENT

Non-disclosed expert opinions must be stricken from Drummond's expert declarations. Drummond's attempt to make its own rules by disregarding the Scheduling Order and flouting the rules of discovery is fundamentally unfair. In addition, portions of the declarations are entirely speculative, constitute mere legal conclusions, or attempt to explain or refute prior testimony.

When a party seeks to use expert testimony, it must disclose a report that contains, among other requirements, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). The disclosing party must also supplement the report "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete." *Id.* 26(e). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with

the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (quotation marks and citation omitted). Indeed, if a party fails to adhere to the disclosure requirements of Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Reese*, 527 F.3d at 1264-66 (holding that the district court did not err by excluding an expert affidavit from consideration of a motion for summary judgment when the failure was unjustified and harmful to the opposing party). The non-disclosing party bears the burden of establishing that its failure to disclose was substantially justified or harmless. *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

Appropriately, our courts have stricken expert reports and excluded expert testimony pertaining to opinions, and the bases and reasons for those opinions, which were not disclosed in the experts' reports. In *United States v. Alabama Power Co.*, the plaintiff moved for summary judgment and submitted an expert affidavit in support of its motion, and the defendant moved to strike a portion of the expert affidavit because the opinion relied on a formula and documents that the expert did not disclose in his expert report. 274 F.R.D. 686, 689 (N.D. Ala. 2011). The court concluded that this was a violation of Rule 26(a) and that the plaintiff had not shown that the failure was substantially justified or harmless, and therefore

the plaintiff could not use the information. *Id.* at 691. Similarly, in *United States ex rel. George v. Fresenius Medical Care Holdings, Inc.*, the defendant moved to strike exhibits the plaintiff intended to use at trial. 2016 WL 5361666, at *7-8 (N.D. Ala. Sept. 26, 2016). This Court ruled that the failure to disclose the exhibits violated Rule 26 and should be stricken pursuant to Rule 37, despite the expert's deposition testimony that was arguably related to the exhibits. *Id.* The Court reasoned that the plaintiff's failure to disclose deprived the defendant of the chance to prepare an effective and efficient response to the expert opinion. *Id.*

Several opinions stated in the declarations also must be stricken because they are entirely speculative, constitute mere legal conclusions, or both. The Court should strike these portions of the declarations pursuant to Rules 26 and 37 because Drummond either failed to disclose, or failed to timely disclose, the "basis and reasons" for those opinions. Fed. R. Civ. P. 26(a)(2)(B)(i); *see Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323-24 (11th Cir. 2008) (holding that a district court did not err in striking expert opinions pursuant to Rules 26 and 37).

Drummond's experts each use similar language to expressly disclose that they wrote these declarations, which are, in pertinent part, new and expanded expert reports, in response to BWR's Partial Summary Judgment Motion. Def. Ex. A, Weems Decl. ¶ 11, Doc. 61-1; Ex. B, Noble Decl. ¶ 4, Doc. 61-5; Ex. C, Wielinga Decl. ¶ 4, Doc. 61-6; Ex. G, Sisk Decl ¶ 4, Doc. 61-10; Ex. I, Simpson

4

Decl. ¶ 5, Doc. 61-24. These declarations contain new opinions, absent from prior reports, ostensibly tailored to rebutting BWR's summary judgment evidence.

The following portions of the new expert declarations contain opinions not disclosed in Drummond's expert reports or in depositions, or prior to the discovery deadline. In most instances, the declarations cite directly to and purport to rebut BWR's expert reports provided last October, even though Drummond's rebuttal expert reports did not raise these issues. Therefore, the Court should not consider this evidence in determining summary judgment because they are new, untimely expert opinions, and several of them are also speculative, offer legal conclusions, or impermissibly attempt to refute or explain prior testimony. Fed. R. Civ. P. 37(c)(1).

**Weems:** Paras. 13 and 14 of Weems's Declaration are new, untimely expert opinions. In ¶ 13, Weems improperly expands her expert report by relying on previously-uncited ADEM guidance documents, and alleging violations of this new standard. In addition, the cited guidance is irrelevant to the claims in this case, as there is no requirement that a plaintiff in a CWA/RCRA citizen suit utilize a state guidance document to prove its claims. Para. 14 should be stricken for the same reasons. It cites the same ADEM guidance as ¶ 13 and alleges violations of this newly-cited standard. Para. 14, at p. 7, criticizes, for the first time, sampling conducted in August 2017. It was discussed in BWR's expert reports, *see* Pl. Ex.

C-1 § 6.3, Doc. 53-6; *id.* Ex. LL-1 at 9-11, Doc. 56-2; but Weems did not criticize or opine about the August sampling in her expert reports, nor did she list the elements of a "defensible sampling plan." Her claim that there was no joint sampling program is also contradicted directly by Drummond's counsel. *See* Doc. 36 (joint motion referring to "joint site inspection"); Ex. 1. Also, BWR sent Drummond the sampling plans in advance of the joint sampling visits. Exs. 2-3.

**Noble:** Paras. 5 (second half), 6, 8, and 9 (first paragraph) of Noble's Declaration are new, untimely expert opinions. The second half of ¶ 5, beginning at "To my knowledge . . ." is a new opinion because Noble never estimated flow volumes of discharges from the site in her reports, even though BWR's expert, Brown provided estimates in his expert report. Pl. Ex. C-1 at 40. Para. 6 is a new opinion—Noble did not define "intermittent stream" in her expert reports or cite to the Corps of Engineers' definition. Noble's testimony also contradicts the reports and deposition testimony of other Drummond experts. *See, e.g.*, Simpson Decl. ¶ 6. Para. 8 is a new opinion that is substantially similar to Weems' criticism of the joint sampling in Weems Decl. ¶ 14. It should be stricken for the same reasons. In first paragraph of ¶ 9, Noble similarly offers new criticism of BWR's surface water background samples that is not in her expert reports.

**Wielinga:** Paras. 5, 6 (last para.), 7 (last two paras.), 8 and 9 of Wielinga's Declaration are new and untimely expert opinions. In ¶ 5, Wielinga criticizes, the

6

first time, the acid based accounting analysis set forth in BWR's expert Johnson's reports. The last paragraph of ¶ 6 cites new literature, and previously uncited standards, and alleges, for the first time, violations of these new standards. In the last two paragraphs of ¶ 7, Wielinga cites to new figures and calculations, and provides an insufficient basis for his opinion. He also failed to provide the data considered in forming the opinions, such as the sampling locations and sampling dates used to determine the median figures. These paragraphs lead to many unanswered questions, such as whether he included background sampling locations in his calculations. In ¶ 8, Wielinga discusses groundwater onsite, cites to new figures and calculations and provides an insufficient basis for his opinion.[1] Para. 9 offers new opinions and analyses purporting to rebut Johnson's data regarding the discharge of acid mine drainage in his November 2017 and April 2018 expert reports.

**Sisk:** Paras. 5 (last sentence), 8, 9, 13, 14, and 15 of Sisk's Declaration are new, untimely expert opinions. The last sentence of ¶ 5 is a new opinion—Sisk never mentioned a waste treatment system exclusion in his expert reports. It is also speculative, provides no facts or data considered, and is a legal conclusion. Para. 8 is a new opinion—Sisk does not discuss PELA data or NPDES permit limits in his

---

[1] This testimony is also erroneous; three other Drummond experts contradict it. *See, e.g.*, Def. Ex. F ¶ 16, Doc. 61-9 (George Decl.); Pl. Ex. RR 144:11-146:6, Doc. 56-9 (Sisk Dep.); Simpson Decl. ¶ 17.

reports. Also, Sisk's attempt to explain or "interpret" the testimony of Drummond's Dwight Hicks in a more favorable light for Drummond is not a proper subject for expert testimony. Para. 9 is a new opinion which purports to interpret a permit application he never mentioned in his expert report, while providing no valid basis or reason for his blatant speculation regarding an agency employee's thoughts and decisions made decades ago. Para. 13 is a new opinion attempting to rebut the WET (toxicity) test analysis, but Sisk has not previously opined on the WET test analysis. In ¶ 14, Sisk attempts to rebut a direct quote from Brown's report, Pl. Ex. C-1 at 64, when he never did so in his expert reports. Para. 15 expresses a new opinion, and the opinion regarding agency actions or decisions is beyond the scope of his knowledge, not a valid subject for expert testimony, and purports to offer a legal analysis or conclusions. The last sentence is also wholly speculative, and Sisk provides no basis or reason for his opinion. Drummond's counsel is attempting to have experts voice and validate faulty legal arguments.

**Simpson:** Paras. 7 (last sentence), 8-10, 13, and 15-17 of Simpson's Declaration are new, untimely expert opinions. Para. 7 is a new opinion—Simpson did not visit the site until after his expert reports were submitted to BWR, and therefore he could not opine as to his personal observations of the site, as he attempts to do at this late stage. Pl. Ex. PP at 15:5-8, Doc. 56-7. He never supplemented his reports with additional opinions formed after his site visit. Para.

7 also contradicts his prior expert report, where he notes that there are streambeds and stream channels on the site, Def. Ex. I-1 at 1, Doc. 61-26, and he has never opined that the water would flow laterally on the siterather than downstream. Para. 8 is a new opinion—Simpson never mentioned BWR's use of grab samples and does not criticize BWR's sampling results from 2011, 2015 and 2016 in any respect in his reports. Para. 9 conflicts with Simpson's prior testimony in which he agrees that the presence of aquatic invertebrates is a "chicken or the egg" issue. *See* Pl. Ex. PP at 160:22-162:22. In fact, Simpson now attempts to opine about WET test sampling locations SW8 and 9 when he previously testified that he never saw these locations. *Id.* at 121:8-15. Para. 10 is a new opinion—Simpson has not, until now, attempted to refute Brown on this point despite Brown's opinion expressed in his expert report almost a year ago. *See* Pl. Ex. C-1 at 63-66. Para. 13 is a new opinion—Simpson has never opined that the conveyances he mentions are not "discernable, confined or discrete." Similarly, he did not opine within the discovery period that the conveyances onsite flow laterally, not downstream. Para. 15 is a new opinion—he never previously opined as to what type of streams are or are not WOTUS. It is also a legal opinion and an erroneous statement of the law which is, again, an attempt by Drummond to have experts give voice to tardy and erroneous legal arguments. Para. 16 is a new opinion—he never definitively stated in reports that the streams on-site would not support aquatic communities. *See,*

9

*e.g.*, Def. Ex. I-1 at 13 (stating that it is unlikely that a *balanced* aquatic community occurs on-site). Again, he has never visited and observed WET testing locations SW8 and SW9. Pl. Ex. PP at 121:8-15. In ¶ 16, he also contradicts his prior reports and testimony, as well as Decl. ¶ 9. Para. 17 is a new opinion—Simpson did not mention Toxicity Reduction Evaluation or 40 C.F.R. § 122.44 in his expert reports or his deposition. He now attempts to refute his testimony regarding the significance of WET testing, in which he admitted that the WET test results established toxicity. *See id.* at 111:15-121:2.

## **CONCLUSION**

Drummond's failure to disclose opinions and/or the bases and reasons for them deprived BWR of its right to "use the report[s] to examine the expert[s] at the[ir] depositions," and "it is harmful to deprive opposing counsel of the expert's report before his deposition." *Walter Intern. Prods., Inc. v. Salinas*, 650 F.3d 1402, 1413 (11th Cir. 2011). Similarly, BWR is harmed because its summary judgment motion was prepared considering Drummond's expert reports; by expanding its experts' opinions, offering wholly new expert opinions, and attempting to refute prior deposition testimony, Drummond is trying to skirt the Scheduling Order and discovery process and change the factual record well after the close of discovery. For these reasons, the Court should strike the cited materials and decline to consider them in connection with the pending motions for summary judgment.

Respectfully submitted this 17th day of September, 2018.

**s/Barry A. Brock**
Barry A. Brock (ASB-9137-B61B)
Christina Andreen (ASB-9696-D10R)
Southern Environmental Law Center
2829 Second Avenue S., Ste. 282
Birmingham, AL 35233
tel: (205) 745-3060
fax: (205) 745-3064
bbrock@selcal.org
candreen@selcal.org

James Hecker
Public Justice
1620 L Street NW, Ste. 630
Washington, DC 20006
tel:  (202) 797-8600
fax: (202) 232-7203
jhecker@publicjustice.net

Eva L. Dillard (ASB-4118-A59E)
Black Warrior Riverkeeper, Inc.
710 37th Street South
Birmingham, AL 35222-3206
tel:  (205) 458-0095
fax: (205) 458-0094
edillard@blackwarriorriver.org

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of September, 2018, the foregoing Plaintiff Black Warrior Riverkeeper's Brief in Support of Motion to Strike Untimely Expert Opinions was filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

William A. Davis, III, Esq.
Richard E. Davis, Esq.
Alfred H. Perkins, Jr., Esq
Starnes Davis Florie, LLP
100 Brookwood Place, 7th Floor
Telephone:   (205) 868-6000
Facsimile:    (205) 868-6099
Birmingham, AL 35209
rdavis@starneslaw.com

*Attorneys for Defendant*

                                                **s/Barry A. Brock**

                                                Barry Brock