FILED

2022 Aug-10  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BLACK WARRIOR RIVER-KEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action Number |
| | ) | **2:16-CV-01443-AKK** |
| **v.** | ) | |
| | ) | |
| **DRUMMOND COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is a joint motion for the entry of a consent decree that the parties negotiated to resolve this case in consultation with the U.S. Department of Justice. *See* doc. 146. The DOJ has indicated that it does not object to the entry of the consent decree. *See* doc. 147-1. As explained herein, the motion, doc. 146, is due to be granted, and the court will enter the consent decree by separate order.

## I.

"District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy." *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240 (11th Cir. 1997). Consent decrees must also be "fair, adequate, and reasonable" and not "the product of collusion between the parties." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). Where, as here, the consent decree resolves claims under federal statutes, the consent decree cannot

violate the statutes and must comport with the statutory objectives. *See White v. Alabama*, 74 F.3d 1058, 1074–75 (11th Cir. 1996); *Fla. Wildlife Fed., Inc. v. Jackson*, No. 4:08cv324-RH/WCS, 2009 WL 5217062, at *3 (N.D. Fla. Dec. 30, 2009).

## II.

Black Warrior Riverkeeper sued Drummond Company in 2016 under the Clean Water Act and the Resource Conservation and Recovery Act for allegedly discharging acid mine drainage and other pollutants from the Maxine Mine Site into the Black Warrior River's Locust Fork and its tributaries. *See* docs. 1; 24. BWR sought injunctive and declaratory relief, civil penalties, and attorneys' fees and costs. *See id. See also* doc. 146 at 2. In 2019, the court granted BWR's motion for summary judgment on the CWA claims predicated on the discharge of AMD from the refuse pile, ditches, channels, gullies, basins, and dams at the Site into the Locust Fork. Doc. 93. Earlier this year, with the guidance of the Supreme Court's decision in *County of Maui v. Hawai'i Wildlife Fund*, 140 S. Ct. 1462 (2020), the court also granted BWR's renewed motion for summary judgment on the CWA claims predicated on the groundwater discharges at the Site. Doc. 122.

Thereafter, the parties began negotiating to resolve BWR's claims and to obviate the need for trial. In May 2022, the parties informed the court that they had reached an agreement and were finalizing a proposed consent decree in consultation

with the DOJ, pursuant to the government's authority under the CWA. *See, e.g.*, docs. 143; 145; 146. The parties subsequently filed the instant motion for approval of a consent decree, amended as instructed by the DOJ. *See* docs. 146; 146-1. The parties also filed a letter from an attorney with the DOJ's Environmental and Natural Resources Division indicating that the DOJ does not object to the consent decree. *See* docs. 147; 147-1.

## III.

The parties represent that the terms of the proposed consent decree, which resolves all of the claims in this case, "were negotiated by the parties and that they are appropriate, reasonable, and in the public interest." Doc. 146 at 2. Upon review, the court sees no reason to disagree and will approve and enter the consent decree.

For one, the proposed consent decree appears to reflect a reasonable compromise: "[E]ach side could have done better or worse by continuing to litigate." *See Fla. Wildlife Fed.*, 2009 WL 5217062, at *4. For example, the settlement requires Drummond to achieve compliance with specified discharge and effluent limits and water quality standards "by whatever scientifically proven and environmentally sound technologies it chooses" while allowing BWR to monitor the results. *See* doc. 146-1 at 4–8. The decree also requires Drummond to perform sampling and data collection and to provide BWR with a "quarterly report" of "all sampling activity and results," and it also sets out milestones under which

3

Drummond's noncompliance will result in monetary penalties. *See, e.g.*, *id.* at 8–10.  The court is confident that these terms and others, which the court highlights below, illustrate that BWR and Drummond reached a fair and reasonable compromise.

Additionally, and relatedly, nothing in the record suggests that the proposed decree is the product of collusion.  To the contrary, the parties intensely and zealously litigated this case from its inception six years ago and, despite their opposition to one another, ultimately reached a settlement through their advocates' committed and professional efforts.  Indeed, the proposed decree is detailed, thorough, and appears to represent a well-negotiated compromise between the parties and not, for instance, a last-minute attempt to merely get rid of this lawsuit.

Importantly, the proposed decree is also consistent with the aims of the CWA and the RCRA.  As the DOJ represents in its letter, if a defendant in an environmental lawsuit "has been out of compliance with statutory or permit requirements," then the proposed consent judgment—like the one here—"should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project payment sufficient to deter future violations, or combinations of the above." Doc. 147-1 at 2. That is the case here.  As mentioned, the proposed decree stipulates certain compliance requirements and deadlines that, if violated, mandate Drummond to pay

monetary penalties. *See* doc. 146-1 at 8–10. The proposed decree also requires Drummond to "pay $10,000 as a civil penalty to the U.S. Treasury for the Clean Water Act violations cited by the Court in its rulings." *Id.* at 12. Drummond must also pay BWR's attorneys' fees, expert fees, and other litigation expenses. *Id.* at 14.

Finally, Drummond must "fund a supplemental environmental project (SEP) in the amount of $1,000,000 to be provided to the recipient Freshwater Land Trust" or donate to FLT "all or a portion of a property it owns at the confluence of the Locust and Mulberry forks of the Black Warrior River . . . that is valued at $1,000,000 or more." *Id.* at 13. This area is apparently "of unique conservation value because it is a forested waterfront peninsula at the confluence of the Mulberry and Locust forks where they form the Black Warrior River," and "[i]ts preservation and protection would also enhance water quality in a sensitive part of the Black Warrior River watershed." *Id.* at 13–14. For its part, FLT has affirmed that it read the proposed consent decree and will use the $1,000,000 "to address an area or areas of concern within the Locust Fork watershed" after consultation with BWR or otherwise receive property from Drummond with "unique conservation value to the Locust Fork watershed." Doc. 147-1.

Taken together, the court is satisfied that the proposed consent decree comports with the aims of the CWA and the RCRA. After all, Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the

Nation's waters," 33 U.S.C. § 1251(a), and enacted the RCRA "to promote the protection of health and the environment and to conserve valuable material and energy resources," including by "assuring that hazardous waste management practices are conducted in a manner which protects human health and the environment," 42 U.S.C. § 6902(a).  Thanks to the parties' endeavors, the proposed decree serves these statutory objectives through remedial efforts and future conservation projects at the Black Warrior River.

## IV.

In sum, for the foregoing reasons, the joint motion to enter the proposed consent decree, doc. 146, is **GRANTED**.  The court will enter the consent decree, doc. 146-1, by separate order.

**DONE** the 10th day of August, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

6